IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Paglioni & Associates, Inc.,**

    **Plaintiff,**

    vs.                                Case No.: 2:06-cv-00276

**WinnerComm, Inc.,**                    JUDGE GRAHAM

    **Defendant.**

**OPINION AND ORDER**

On April 14, 2006, Paglioni & Associates, Inc. ("Paglioni") filed suit against WinnerComm, Inc. ("WinnerComm") for breach of contract, unjust enrichment, and quantum meruit. Paglioni filed suit in this Court based on diversity jurisdiction under 28 U.S.C. § 1332. In response to the complaint, on June 8, 2006, Winnercomm filed a motion to dismiss for lack of personal jurisdiction.

Paglioni then filed an amended complaint naming WinnerComm's wholly-owned subsidiary, Innovative Media Solutions, as an additional defendant to the suit. Because of the amended complaint, this Court found that WinnerComm's original motion to dismiss was moot. In response to that order, WinnerComm filed a motion to dismiss Paglioni's amended complaint for lack of personal jurisdiction, claiming that Paglioni failed to make any additional allegations in the amended complaint that would subject WinnerComm to personal jurisdiction.

For the following reasons, this Court concludes that it lacks personal jurisdiction over Winnercomm, and WinnerComm's motion to dismiss the amended complaint is granted.

**I.    Factual Background**

The following statement is taken from the amended complaint, the motion to dismiss, and

1

all documents that the parties submitted in connection with the motion to dismiss. Plaintiff Paglioni is a company that sells sponsorships and commercials for national broadcast television events. Paglioni is incorporated in Ohio with its principal place of business in Dublin, Ohio. Defendant WinnerComm is a production company that broadcasts television events. WinnerComm is incorporated in Oklahoma with its principal place of business in Tulsa, Oklahoma.

Paglioni alleges that it entered into a business relationship with WinnerComm in September 2004. Paglioni contends that it would take companies who wanted to purchase sponsorships or commercials and direct them to advertise their products on WinnerComm's television broadcasts. In return, WinnerComm would pay Paglioni a 10% commission for the directed sale. WinnerComm claims that no such relationship or contract was formed with Paglioni, and they paid Paglioni a commission on only one prior occasion.

Paglioni contends that WinnerComm breached the contract in April 2005 when Paglioni set up a business meeting between Cingular Wireless and WinnerComm. Cingular Wireless contacted Paglioni, and from there, Paglioni referred Cingular to WinnerComm. Following the business meeting, WinnerComm secured a $15,000,000 deal with Cingular but refused to pay Paglioni the 10% commission for the sale. Paglioni asserts claims for breach of contract, unjust enrichment, and quantum meruit.

WinnerComm filed a motion to dismiss, denying the existence of personal jurisdiction. WinnerComm's President and CEO, James Wilburn, stated in an affidavit that WinerComm does not own or lease property in Ohio, or have employees, offices, current customers, or debts in Ohio. June 5, 2006, Declr. of James Wilburn, ¶2-5. WinnerComm argues that they do not have sufficient connections to Ohio to be subjected to personal jurisdiction. Additionally, WinnerComm argues that

Paglioni failed to establish the particular details of the business relationship between the two parties that is necessary for personal jurisdiction.

Paglioni responds that this Court has personal jurisdiction, both specific and general jurisdiction, based on eight contacts that WinnerComm has with Ohio. First, WinnerComm sent at least one commission payment to Paglioni in Ohio, and any further payments under the agreement with Paglioni would be sent to Ohio. Second, in February and May of 2005, WinnerComm received three checks from Ohio for commercials Paglioni purchased from WinnerComm. August 3, 2006, Declr. of Lawrence Paglioni, ¶2. Third, WinnerComm traveled to Ohio to make a business proposal to Nationwide Insurance in October 2005. Id., ¶3. Fourth, WinnerComm produces highlight tapes for Major League Soccer teams, including the Columbus Crew located in Ohio. Id., ¶5. WinnerComm rented production equipment from an Ohio company to produce highlight tapes for the Columbus Crew games. Id. Fifth, Winnercomm produces the Three Tour Golf Challenge in Las Vegas, Nevada. August 2, 2006, Declr. of Kip Eriksen, ¶4. The tournament benefits an Ohio charity, Tournaments for Charity. Id. In preparing for the event, Paglioni provided an affidavit from an employee of Tournaments for Charity who states that WinnerComm works and interacts with Tournaments for Charity in preparation for the annual event. Id. Sixth, WinnerComm, on one occasion, traveled to Wendy's International Headquarters in Ohio for a marketing trip in April 2004. August 3, 2006, Declr. of Lawrence Paglioni, ¶4. Seventh, Paglioni documents email communication between Paglioni and WinnerComm, demonstrating that WinnerComm sent emails to Ohio. Id., ¶5. Lastly, Paglioni contends that the contract between the two parties was formed in part in Ohio.

## II. Personal Jurisdiction

### A. Standard

The party asserting personal jurisdiction bears the burden of proving that personal jurisdiction exists. CompuServe v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). In this case, the burden of proof rests on the plaintiff, Paglioni. When a court does not conduct an evidentiary hearing, as in this case, the plaintiff needs to make only a prima facie, or threshold, showing that personal jurisdiction exists. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). Without an evidentiary hearing, the court may consider only the pleadings and affidavits submitted by the parties. CompuServe, 89 F.3d at 1262. If there is a discrepancy between the plaintiff's and defendant's allegations, the court must consider the information in a light most favorable to the plaintiff. Id.

When a federal district court sitting in diversity jurisdiction faces a personal jurisdiction issue, the court must apply the law of the forum state regarding personal jurisdiction, and it also must determine whether jurisdiction is within the limits of constitutional due process. Theunissen, 935 F.2d at 1459. The applicable state law, in this case, is Ohio's Long-Arm Statute found in Ohio Rev. Code Ann. § 2307.382. The Ohio Supreme Court has held that Ohio's Long Arm statute does not reach the limits of due process, requiring this Court to conduct analysis under both laws. Goldstein v. Christiansen, 638 N.E.2d 541, 545 n.1 (Ohio 1994); Calphalon Corp. v. Rowlette, 228 F.3d 718, 720 (6th Cir. 2000). The issue then becomes whether Paglioni provided a prima facie showing that personal jurisdiction exists under both constitutional due process and Ohio's Long-Arm Statute.

### B. Constitutional Due Process

This Court must first determine whether personal jurisdiction is proper under constitutional due process. Paglioni alleges that this Court has both general and specific jurisdiction over WinnerComm. A court has general jurisdiction over a defendant when the defendant's contacts with the state are so high that a party has the ability to sue that defendant in the state for any claim, even those not arising in the state. Conti v. Pneumatic Prod. Corp., 977 F.2d 978, 981 (6th Cir. 1992). A court typically has specific jurisdiction over a defendant when the claim has some connection with the forum state. Youn v. Track, 324 F.3d 409, 418 (6th Cir. 2003). In the current case, this Court has neither general nor specific jurisdiction over WinnerComm.

### 1. General Jurisdiction

For general jurisdiction to exist, the defendant must have such "continuous and systematic" contacts with the forum state that personal jurisdiction exists even over claims unrelated to the defendant's contacts with the forum state. Conti, 977 F.2d at 981. The Sixth Circuit Court of Appeals in Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd., 91 F.3d 790, 793 (6th Cir. 1996) further defined the meaning of "continuous and systematic" contacts. In Nationwide, the court found that two reinsurance agreements with Ohio companies and participation in a reinsurance pool operated by an Ohio company did not constitute "continuous and systematic" contacts. Id. at 794. The court reasoned that because the defendant did not direct activities toward the forum state to enter the agreements and the agreements did not require the defendant to send representatives to the forum state to conduct any business there, these contacts were insufficient to result in general jurisdiction. Id. at 794.

The Supreme Court of the United States also distinguished "continuous and systematic" from

contacts of "negligible significance" in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). The plaintiffs, four Texas citizens, brought a wrongful death action against a Columbian corporation in a Texas state court. Id. at 410. The corporation denied the existence of personal jurisdiction. Id. at 412. The plaintiffs contended that the Texas corporation had jurisdiction because the corporation had sent its CEO to Texas for a business meeting, accepted checks from a Houston bank, purchased equipment from a Texas corporation, and sent personnel to Texas for training. Id. at 416. The Court held that these contacts did not constitute general jurisdiction. Specifically, the Court found that accepting a check was of "negligible significance," and the one visit for a business meeting was not continuous or systematic. Id. Furthermore, the Court held that "mere purchases" in the state and the "brief presence" of employees attending a training in the state was insufficient contact to constitute general jurisdiction. Id. at 418.

Here, the contacts that WinnerComm has with Ohio do not constitute "continuous and systematic" contact. Paglioni, to support its claim that general jurisdiction exists, relies on the following contacts between WinnerComm and Ohio: (1) WinnerComm once traveled to Ohio to make a business proposal to Nationwide Insurance; (2) WinnerComm, on one occasion, traveled to Wendy's International Headquarters in Ohio for a marketing trip; (3) WinnerComm received checks from Ohio – by way of Paglioni – for commercial time; (4) Winnercomm produces the Three Tour Golf Challenge in Las Vegas, Nevada that benefits an Ohio charity, Tournaments for Charity; (5) WinnerComm produces highlight tapes for Major League Soccer teams, including the Columbus Crew located in Ohio, and rents production equipment from an Ohio company to produce the highlight tapes for the Columbus Crew games. These five contacts are insufficient to support general personal jurisdiction over WinnerComm.

The first two contacts, traveling to Ohio for business proposals with Nationwide and Wendy's, are easily distinguishable from "continuous or systematic" contacts as described in Nationwide. Traveling to the state on two occasions to make business proposals can hardly be considered continuous or systematic. See Roll v. Dimension Films, L.L.C., No. 1:05-cv-387, 2006 WL 181993, at *6 (S.D. Ohio Jan. 23, 2006) (stating "single trip not sufficient to confer general jurisdiction"); In re Huffy Corp., __B.R__, 2006 WL 3759848, at *11 (Bankr. S.D. Ohio Dec. 21, 2006) (isolated business trips to Ohio insufficient for general jurisdiction). The fact that WinnerComm traveled to Ohio a mere two times does not constitute substantial contacts for the purpose of general jurisdiction. Instead, this can be characterized as a mere "brief presence" in the state. See Helicopteros, 466 U.S. at 418; Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1045 (2d Cir. 1990) (collecting cases holding that sporadic business trips to forum state do not confer general jurisdiction).

Paglioni argues that the three checks it sent from Ohio to WinnerComm as payment for commercial time help to establish general jurisdiction. The mere acceptance of a check from Ohio, however, is of "negligible significance" as stated in Helicopteros. See Helicopteros, 466 U.S. at 416; Mahler v. Startari, 142 Fed. Appx 839, 842 (6th Cir. 2005) (stating that when a defendant accepts funds, the defendant can't dictate where the plaintiff draws its checks); Kenny v. Alexson Equip. Co., 495 A.2d 974, 984 (Pa. Super. Ct. 1981) ("To accept the reasoning that acceptance of a check drawn on an out-of-state bank is sufficient to constitute minimum contacts with that state is patently absurd").

The remaining two contacts, the Golf challenge benefitting an Ohio charity and the production of the Columbus Crew highlight tapes, also do not rise to the level of "continuous and

systematic" contacts.  Paglioni offers an affidavit stating that the production of the Golf Challenge in Las Vegas, Nevada requires WinnerComm to work with Tournaments for Charity, an Ohio corporation.  The affidavit, however, does not state in what capacity that the two companies work together or for how long and how often the two work together.  There is no allegation that WinnerComm travels to Ohio to work on the event.

Furthermore, the affidavit of the Tournaments for Charity representative shows that WinnerComm did not direct its activities towards Ohio to work with the charity.  The affidavit states that another company, Jastrow, is the company that produces the golf event, and it subcontracts with WinnerComm to assist with the filming and production of the event.  Jastrow is a California company without any offices in Ohio.  As a subcontractor, WinnerComm works with Tournaments for Charity only incidently because of Jastrow.  WinnerComm did not initiate this contact and did not direct its activities towards Ohio to work with Tournaments for Charity.  This contact is insufficient to invoke general jurisdiction.

Paglioni argues that this Court has general jurisdiction over WinnerComm because of its contact with the Columbus Crew, which includes renting equipment from an Ohio Company, Lyon Video.  Paglioni, however, fails to provide sufficient support for its statements about WinnerComm's relationship with Lyon Video.  In an attempt to prove the relationship, Mr. Paglioni sent a letter to Lyon Video asking them to confirm that WinnerComm rents equipment from Lyon Video for Columbus Crew games.  Mr. Paglioni sent this letter under the guise of a reference request.  Lyon Video simply replied that they have no problem with WinnerComm without describing their relationship.  Because Lyon Video did not affirmatively state their relationship with WinnerComm or provide an affidavit describing this relationship, Paglioni fails to demonstrate that

WinnerComm has significant contacts with Ohio through Lyon Video.

Even if WinnerComm does rent equipment from Lyon Video, WinnerComm's contact with Lyon Video and the Columbus Crew is still insufficient to constitute general jurisdiction. First, WinnerComm's rental of equipment from Lyon Video in Ohio to produce the highlight tape is similar to the "mere purchases" of equipment in Helicopteros, making this contact insufficient. See Helicopteros, 466 U.S. at 418; Granger & Assoc., Inc. v. Marion Steel Co., No. 2:00-cv-355, 2001 WL 15632, *5 (S.D. Ohio 2001) (stating that the act of purchasing goods in the forum state does not constitute "continuous and systematic" contacts).

Second, WinnerComm's contact with the Columbus Crew itself is insufficient. If general jurisdiction existed based on this contact, WinnerComm would be subject to personal jurisdiction in every state with a Major League Soccer team for all suits even those unrelated to Major League Soccer. Allowing WinnerComm to be haled into court in each of these states would be unduly burdensome to WinnerComm without more substantial contact with the state. Again, this contact does not rise to the level of the continuous and systematic contacts needed for general jurisdiction.

Because Paglioni failed to make allegations that would establish "continuous and systematic" contacts, this Court does not have general jurisdiction over the defendant.

### 2. Specific Jurisdiction

With specific jurisdiction, the Sixth Circuit has developed a three-part test for determining whether the particular circumstances in any case provide sufficient contact between a non-resident defendant and the forum state to support the exercise of personal jurisdiction:

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection

with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Indus, Inc., 401 F.2d 374, 381 (6th Cir. 1968). If the three criteria are satisfied, jurisdiction is appropriate if the facts of the particular case are such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The goal of this test is to protect non-resident defendants against the burdens of litigating in a distant and inconvenient forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). While this test established a useful analytical framework, each case must be determined on its facts. See Velandra v. Regie Nationale des Usines Renault,, 336 F.2d 292, 295 (6th Cir. 1964).

### a.     Purposeful Availment

The first prong of the test asks whether WinnerComm "purposely availed" itself of the privilege of conducting activities within the forum state. Southern Machine, 401 F.2d at 381. Purposeful availment is defined as having substantial connection to the forum state such that the defendant can reasonably anticipate being haled into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75 (1985). The plaintiff must demonstrate that the defendant was more than a mere passive defendant, which is one who did not initiate the original transaction and did not direct itself to the forum state. Friedman v. Speiser, Kruse & Madole, P.C., 565 N.E.2d 607, 609 (Ohio Ct. App. 1988). The defendant's contact with the forum state must also be more than "random, fortuitous, or attenuated" to constitute purposeful availment. Burger King, 471 U.S. at 475.

In Kerry Steel, Inc. v. Paragon Indus. Inc., 106 F.3d 147 (6th Cir. 1997), the Sixth Circuit elaborated on the distinction between purposeful availment and "random, fortuitous, or attenuated" contacts. The plaintiff, a Michigan corporation, brought a breach of contract action against the

defendant, an Oklahoma corporation. Id. at 149. The plaintiff argued that the district court in Michigan had personal jurisdiction over the defendant because of phone calls and mail the defendant sent to Michigan, payments made to Michigan, and the contract, which required performance in Michigan. Id. The Sixth Circuit rejected purposeful availment as a result of the contract because the contract was only a "one-shot transaction" and not an on-going obligation. Id. at 151. With respect to the phone calls and mail to Michigan, the court called this "precisely the sort of 'random, fortuitous, and attenuated' contacts that the Burger King Court rejected." Id. at 151. Lastly, the court found that simple payments were insufficient to constitute purposeful availment and were akin to "random. fortuitous, and attenuated" contacts. Id. at 152.

The existence of a contract between the plaintiff and the defendant does not necessarily constitute purposeful availment. In determining whether the existence of a contract is sufficient to constitute purposeful availment, a court should consider whether the subject matter or performance of the contract at issue is connected to the forum state. Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000). Monetary injury to the in-state plaintiff is immaterial as long as the obligation did not arise from a privilege that the defendant exercised in the forum state. Id. Furthermore, a contract is insufficient to constitute purposeful availment if the defendant, through the contract, was not attempting to exploit the state's market, but rather had contact with the state only because the plaintiff chose to reside there. Id. at 722-23 (citing Kerry Steel, 106 F.3d at 151).

Paglioni claims that WinnerComm purposely availed itself of the privilege of conducting activity in Ohio by sending e-mails to Paglioni in Ohio, sending commission payments to Paglioni in Ohio, and forming the contract at issue. As illustrated in Kerry Steel, e-mails, like telephone calls and letters, are "random, fortuitous, and attenuated" contacts that are insufficient to constitute

11

purposeful availment. See also Calphalon, 228 F.3d at 723 (found that phone, mail, and fax communication was insufficient to constitute purposeful availment when the communication only occurred in the forum state because the plaintiff chose to reside there); Ohio Nat. Life Assur. Corp v. Shippy, No. 1:06-cv-110, 2007 WL 490169, *4 (S.D. Ohio Feb. 9, 2007) (stating that telephone calls and letters are insufficient to constitute purposeful availment).

Commission payments, like the payments for service in Kerry Steel, are also insufficient. See also Pieczenik v. Dyax Corp., 265 F.3d 1329 (2d Cir. 2001) (holding that an agreement to make payments over time does not confer jurisdiction over a defendant); Neiberger and Assoc. v. WVK, Inc. Civ. No. 05-2865, 2006 WL 2670095, *4 (D. Minn. Sept. 18, 2006) (stating that commission payments sent to plaintiff does not establish personal jurisdiction over the defendant). On the basis of the commission payment to Paglioni, WinnerComm would not reasonably anticipate being haled into court in Ohio.

The contract between WinnerComm and Paglioni also does not constitute purposeful availment on the part of WinnerComm. The only connection between the subject matter of the contract and Ohio was that Paglioni happened to be situated there, and therefore, WinnerComm allegedly was supposed to make commission payments there. Instead, the subject matter of the contract related to Nevada. Paglioni states in its complaint that it brokered a deal for a rodeo event occurring in Nevada, where WinnerComm met with Cingular. The fact that Paglioni suffered a monetary injury in Ohio because of an alleged breach of contract is insufficient to constitute purposeful availment as stated in Calphalon. WinnerComm only had contact with Ohio because Paglioni happened to reside there and not because of any activities that WinnerComm conducted in Ohio. Because of the lack of connection between WinnerComm, the contract, and the forum state,

WinnerComm did not purposefully avail itself of the privilege of acting in the state.

### b. Cause of Action Arising Out of In-State Activities

The second prong of the test asks whether the cause of action arises from the defendant's activities there. Southern Machine, 401 F.2d at 381. A cause of action arises from a defendant's activities in the forum state if a defendant's contacts with the forum state are related to the operative facts of the controversy. CompuServe, 89 F.3d at 1267. With contracts specifically, only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract. Southern Machine, 401 F.2d at 384. Where a plaintiff is basing the action on breach of a contract, the actual breach of the contract must have occurred in the state where the plaintiff is bringing the action to satisfy the "arising from" test. See Calphalon, 228 F.3d at 724. If the breach is based on an alleged failure to pay money, such breach would occur in the state of the breaching party. See Kerry Steel, 106 F.3d at 152.

Paglioni's claim arose out of WinnerComm's refusal to pay the commission that it allegedly was supposed to make under the contract. Paglioni claims that because the parties formed the contract in part in Ohio and the current dispute involves that contract, the claim arises out of WinnerComm's contact with Ohio. The cause of action, however, is for breach of contract, a breach that did not occur in Ohio. WinnerComm's refusal to pay this commission occurred in Oklahoma, where WinnerComm is located, and not the forum state of Ohio. See also Norcold, Inc. v. Greg Lund Products Ltd.,109 F.Supp.2d 819, 826 (S.D. Ohio 2000) (finding that an alleged failure to pay occurs in the location of the defendant); Jewelmasters. Inc v. May Dept. Stores Co., 840 F.Supp. 893, 894 (S.D. Fla. 1993) (finding that a breach occurs in the location where defendant allegedly fails to pay under the contract). Paglioni fails to demonstrate the second prong of the test.

13

### c. Reasonableness of Jurisdiction

The third prong of the test asks whether a substantial enough connection exists between the defendant and the forum state to make the exercise of jurisdiction over the defendant reasonable. Southern Machine, 401 F.2d at 381. Jurisdiction is reasonable as long as it comports with "traditional notions of fair play and substantial justice." CompuServe, 89 F.3d at 1268 (quoting Asahi Metal Indus. v. Superior Court, 480 U.S. 102, 113 (1987)). Certain factors contribute to whether jurisdiction is reasonable. These factors include: (1) the burden on the defendant to litigate in the state, (2) the interest of the forum state, (3) the plaintiff's interest in obtaining relief, and (4) the interest of other states in securing the most efficient resolution of controversy. CompuServe, 89 F.3d at 1268.

Although the plaintiff has an interest in obtaining relief and Ohio has an interest in protecting one of its citizens, the burden on WinnerComm to appear in a state without a substantial connection to Ohio outweighs these interests. WinnerComm's contact with Ohio is not substantial enough to make the exercise of jurisdiction reasonable. WinnerComm has limited contact with the state except for the alleged oral contract formed with Paglioni, who happens to be situated in Ohio. WinnerComm could not reasonably anticipate being haled into court in Ohio based on this limited contact. Forcing WinnerComm to appear in Ohio would be unduly burdensome without more contact with Ohio.

In summary, even looking at the facts in a light most favorable to the plaintiff, Paglioni fails to offer a prima facie showing of personal jurisdiction under federal due process. This court lacks both general and specific jurisdiction over WinnerComm.

    **C.**    **Ohio's Long-Arm Statute**

This Court now must consider personal jurisdiction under the laws of the forum state. The Ohio Long-Arm Statute does not extend to the constitutional limits of the Due Process Clause. Calphalon, 228 F.3d at 720. The relevant portion of Ohio Rev. Code Ann. § 2307.382(A) states that "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state . . ." The transaction of business provision is defined as to carry on business and to have dealing. Logan Farms v. HBH, 282 F.Supp 2d 776, 793 (S.D. Ohio 2003). It is broader than the word "contract," which can include oral contracts. Special Aviation v. Aircraft Structure, 323 F.Supp 2d 839 (N.D. Ohio 2004).

Two factors help determine whether an out-of-state defendant, in a contractual dispute, "transacted business" within the meaning of the Ohio Long-Arm Statute. The first factor is whether the out-of-state defendant initiated the business dealing. Ricker v. Fraza, 828 N.E.2d 205, 210 (Ohio Ct. App. 2005). If the defendant reached out to the plaintiff in the forum state to create a business relationship, the defendant transacted business in the forum state. Id. The second factor is whether the parties conducted their negotiations or discussions in the forum state or with terms affecting the forum state. Id. If the parties negotiated in the forum state with provisions affecting the forum state, the defendant transacted business in the forum state. In addition to these two factors, the plaintiff still must demonstrate that there is a substantial connection between the defendant and the forum state. United Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc., 624 N.E.2d 1048, 1052 (Ohio 1994) (citing Burger King, 471 U.S. at 475).

Here, Paglioni fails to demonstrate who initiated the business dealings. Paglioni alleges that

15

the parties began a relationship in September 2004.  There is no written contract to reflect the alleged agreement.  Mr. Paglioni's affidavit does not say who initiated the dealings.  Paglioni has also submitted a 2006 email exchange between Mr. Paglioni and Mr. Wilburn at WinnerComm.  Mr. Paglioni insists that he started the deal between Cingular and WinnerComm and is due a commission.  Mr. Wilburn denies that he owes Paglioni anything.  In short, these emails are silent on the issue of who initiated the alleged contract between Paglioni and WinnerComm.  Without an affirmative statement of who began the dealings, this Court cannot presume that WinnerComm initiated the transaction.

Under the second factor, there is no evidence to suggest that the discussions and negotiations between the parties occurred in Ohio.  Paglioni argues that the parties communicated via telephone and email.  However, Mr. Paglioni's affidavit makes no mention of any telephone conversations, and the emails submitted relate only to the 2006 dispute in which Mr. Paglioni demanded payment from WinnerComm.  The emails do not reflect any discussions or negotiations leading up to the alleged September 2004 agreement.

Further, the terms of the oral contract, as alleged by Paglioni, did not largely affect Ohio. Payment to Paglioni in Ohio was the only connection between WinnerComm and Ohio.  As previously stated, the mere monetary injury for failure to pay a commission is insufficient to constitute a large effect on the forum state.  By not providing adequate proof that WinnerComm initiated the business dealings, that negotiations occurred in Ohio, or that the deal had a large effect on Ohio, Paglioni has failed to demonstrate a substantial connection between the defendant and the forum state.  Thus, personal jurisdiction over WinnerComm does not exist under Ohio's Long Arm Statute.

## III. Conclusion

Based on the foregoing reasons, WinnerComm's motion to dismiss for lack of personal jurisdiction is granted. Plaintiff's claims against WinnerComm are denied without prejudice.

The Court notes that Innovative Media Solutions, LLC remains as a defendant. To date, Innovative Media Solutions has not filed an answer or otherwise appeared in this action.

It is so ORDERED.

                                      s/James L. Graham  
                                      JAMES L. GRAHAM  
                                      United States District Judge

DATE: March 16, 2007